## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

TIM MARQUEZ,

       Plaintiff,

v.                                                                No. CIV 10-291 JCH/ACT

ROY CORDOVA, MORA COUNTY SHERIFF
(INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY) and MORA COUNTY SHERIFF'S
DEPARTMENT,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Plaintiff's *Motion for Summary Judgment*

(Doc. 19) and Defendants' *Motion for Summary Judgment* (Doc. 21).  In an action for wrongful

termination under 42 U.S.C. § 1983, Plaintiff Tim Marquez, the former Undersheriff for the

Mora County Sheriff's Department ("the Department"), alleges that his dismissal by then-Mora

County Sheriff Roy Cordova ("Cordova") and the Department (collectively, the "Defendants")

upon his declaration of candidacy for Sheriff violated his constitutional right to "freely

comment, believe, and associate in matters of public interest and concern" under the First

Amendment.[1]  (Doc. 1, Cplt. ¶ 13).  The Court, having considered the motions, briefs, exhibits,

---

[1]Plaintiff does not specify the amendment(s) that form the basis of his constitutional challenge in the pleadings.  However, his sole allegation that his right to "<u>freely comment, believe, and associate in matters of public interest and concern</u>" was violated and his reliance on First Amendment case law in his briefs implicate the First Amendment only.  *See, e.g., Serna v. Manzano,* 616 F.2d 1165, 1166-67 (10th Cir. 1980) (characterizing the Supreme Court's test for evaluating the First Amendment free speech rights of public employees as requiring a "balancing between the right of a public employee to <u>freely comment, believe and associate in matters of public interest and concern</u>, and the competing interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees") (emphasis

and relevant law, and being otherwise fully informed, finds that Plaintiff's motion should be denied and Defendants' motion should be granted.

## FACTUAL BACKGROUND[2]

At the time of his dismissal in March 2010, Plaintiff was the Undersheriff for Mora County.  Prior to his promotion to Undersheriff by Cordova on June 26, 2006, Plaintiff served as a deputy for the Department.  As Undersheriff, Plaintiff was second only to Cordova in the Department's chain of command, with duties including:  taking the lead role in preparing the Department's grant applications;  attending on behalf of the Department meetings of the Mora County Health and DWI Council(s) at which the Department had a vote, which he likewise had discretion to cast; working with Cordova on "particular line items" of the Department's budget in order to keep the budget "out of the red"; participating in the training of new law enforcement officers and the supervision of deputies; obtaining purchase orders from County administrative offices to purchase police equipment; standing in for Cordova at meetings of the Mora County Commissioners and other law enforcement agencies; attending meetings of other law enforcement agencies, conferences, and seminars in and outside of Mora County with Cordova; making out work schedules for Department employees, which then needed to be approved by Cordova; signing off on employee timesheets when Cordova was absent; conducting background checks on potential new hires and discussing potential new hires with Cordova; and disciplining

_____

added).

    [2]Except where otherwise noted, the following facts are undisputed.

2

deputies, including outside of Cordova's presence.[3]

On a date in March 2010, Plaintiff informed Cordova that he intended to challenge him in the upcoming Democratic primary election for Sheriff. Thereafter, on March 18, 2010, Cordova and Plaintiff engaged in a series of text messages, including at least the following messages:

Cordova: "Whn r u going 2 drop out?"

Marquez: "I heard u were putting mike begamin as ur undersheriff and laying me off"

Cordova: "Don't play games I already knw who put u 2 run n just be a man n tell me if u r running or getting out n I told I not 2 run in that democrat party. . . . ."

Marquez: "Sorry u need to fire me n have a good reason dude"

Cordova: "Ur at will n I don't need a reason"

Marquez: "Well do it"

Cordova: "I already did"

Marquez: "I need it in writting dude-n u need to remove ur sign from my fence"[4]

---

[3]In response to the proposed undisputed material facts set forth by Defendants on their motion for summary judgment -- including the listing of his professional duties summarized herein, to which Cordova further testified at his deposition – Plaintiff states only that "[m]any facts contained in Defendants' 'Undisputed Material Facts' are disputed." (Doc. 30 at 1). Pursuant to Rule 56.1(b) of the Rules of the U.S. District Court for the District of New Mexico, "[a]ll material facts set forth in the statement of the movant will be deemed admitted unless specifically contraverted." Because Plaintiff does not specifically contravert the listing of his duties set forth by Defendants, the Court deems Defendants' characterization admitted.

[4]Defendants state in reference to the proffered text messages that "any text messages related to this matter (including those not listed in the Complaint) speak for themselves." (Doc. 24 at 3, quoting Doc.6, Amended Answer ¶ 7). However, Defendants "deny all allegations and implications arising from" the messages as presented because they "are incomplete and/or out of order. Defendants further deny Plaintiff's order of presentation and the alleged content of the listed text messages as being misleading, incomplete and/or untrue." *Id.* Defendants do not specifically contravene the statements attributed to Cordova within the meaning of D.N.M. LR-Civ. 56.1(b) by explaining the way in which they are incomplete or misleading, or by quoting or describing the purportedly missing messages. The Court finds that the statements attributed to Cordova are undisputed, regardless of the order or context in which they occurred.

On March 23, 2010, Cordova dismissed Plaintiff from his position with the Department.[5]

## PROCEDURAL HISTORY

On March 29, 2010, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 in the District of New Mexico, alleging violation of his First Amendment rights.  *See supra* n.1. Defendants filed an Answer on April 20, 2010 (Doc. 4), which they amended the following day, April 21, 2010 (Doc. 6).  On August 3, 2010, Plaintiff moved for summary judgment, arguing that Defendants' failure to specifically contravene the text messages he exchanged with Cordova demonstrate that there is no issue of material fact that his First Amendment rights were violated. (Doc. 20).  On August 4, 2010, Defendants filed a cross-motion for summary judgment, arguing that Cordova was immune from suit in his individual capacity under the doctrine of qualified immunity and, further, that Plaintiff could not maintain a § 1983 action against Cordova (in his official capacity) or the Department (under the theory of *respondeat superior).*   (Doc. 21). Defendants concurrently moved for a stay of discovery pending disposition of their motion based on qualified immunity (Doc. 22), which was subsequently granted by U.S. Magistrate Judge Torgerson (Doc. 23).  Briefing was complete on the parties' cross-motions for summary judgment on September 17, 2010.  (Doc. 32)

## LEGAL STANDARDS

---

[5]The date of Plaintiff's firing is taken from Defendants' proposed undisputed material facts.  While the letter Defendants cite in support of this point – and state is attached to their motion as Exhibit E – does not appear to have been attached to their motion, because Plaintiff does not specifically controvert Defendants' proposed material fact as required by D.N.M. LR-Civ. 56.1(b), the Court deems the proferred date admitted.

*Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  *Id.  See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010).  Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 243.

*Qualified Immunity*

Because a successful qualified immunity defense "generally shields from liability for

5

civil damages government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," special standards apply to the assessment of a summary judgment motion raising this defense. *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quotation omitted); *see also Hinton v. City of Elwood*, 997 F. 2d 774, 779 (10th Cir. 1993).

In analyzing a qualified immunity defense, this Court undertakes a three-part inquiry. First, the Court must determine whether the plaintiff 's allegations, if true, establish a violation of the plaintiff's constitutional rights. *Gomes,* 451 F.3d at 1134. Second, if the allegations meet that standard and the analysis continues, the Court must determine "whether the law was clearly established at the time the alleged violations occurred." *Roska v. Peterson,* 328 F.3d 1230, 1247 (10th Cir. 2003). A law is deemed clearly established "if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right." *Gomes*, 451 F.3d at 1134. The Tenth Circuit has provided the additional guidance that, under ordinary circumstances, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains," *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), in order for a plaintiff to demonstrate that the law was clearly established. If the plaintiff shows that the law is clearly established, the third and final part of the inquiry requires the Court to consider whether, "extraordinary circumstances – such as reliance on the advice of counsel or on a statute – so prevented the official from knowing that her actions were unconstitutional that she should not be imputed with knowledge of a clearly established right." *Gomes*, 451 F.3d at 1134 (internal quotation and marks omitted).

**DISCUSSION**

I.  *Plaintiff's Motion for Summary Judgment*

The basis for Plaintiff's motion for summary judgment is Defendants' acknowledgment that the text messages set forth in the Complaint "speak for themselves."  (Doc. 6 ¶ 7). According to Plaintiff, the messages make plain that he was dismissed from the Department because of his decision to oppose Cordova  in the Sheriff's election -- a maneuver that *ipso facto* violated "his right to freely comment, believe, and associate in matters of public interest and concern in violation of the Constitution and 42 U.S.C. § 1983."  (Doc. 20 at 4).  In response, the Defendants argue, *inter alia*, that Plaintiff did not have a clearly established "freedom of association" right under the First Amendment to maintain his position as Undersheriff while running against Cordova.

As a threshold matter, the Court notes that Plaintiff's claim involves *two* types of First Amendment rights -- freedom of association and freedom of speech -- and thus requires the Court to apply two different tests.[6]  First, where a government employee alleges that his employer has taken adverse action on account of his political association and/or political beliefs, we apply the two-part test developed in the *Elrod v. Burns*, 427 U.S. 347 (1976) (plurality opinion), and *Branti v. Finkel*, 445 U.S. 507 (1980), line of cases.  *See Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999).  Second, where a government employee alleges retaliation by his employer on account of his exercise of his First Amendment free speech rights, we apply the balancing test modified by the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006).  *See*

---

[6]Defendants' failure to discuss the appropriate test for application in freedom of speech retaliation cases can likely be attributed to the fact that Plaintiff's theory of the case is largely unstated, even on his motion for summary judgment.  *See supra*, n.1.

7

*Lauck v. Campbell County*, 627 F.2d 805, 814 (10ᵗʰ Cir. 2010).

A. <u>Freedom of Association</u>

Under *Elrod, Branti,* and their progeny, the First Amendment protects government employees "from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance."  *Barker v. City of Del City*, 215 F.3d 1134, 1137 (10th Cir. 2000)  (quotation omitted).  In order to defeat summary judgment on Plaintiff's affiliation claim, the Defendants must establish a genuine dispute of fact as to (1) whether Plaintiff's political affiliation and/or beliefs were "substantial" or "motivating" factors behind his dismissal; and (2) that Plaintiff's position as Undersheriff did not require political allegiance. *See id; see also Jantzen,* 188 F.3d at 1251.

Plaintiff maintains that the proof that his political affiliation was the motor behind his firing is found in Cordova's text message, "I told u not 2 run in tht democrat party. . . ." (Doc. 27 at 4, quoting Cplt. ¶ 7).  According to Plaintiff, in the Tenth Circuit, "political association equates with party affiliation," so that Cordova's warning not to challenge him in the Democratic primary is, in itself, sufficient to meet the first *Elrod/Branti* prong.  *Id.*, citing *Dickeson v. Quarberg*, 844 F.2d 1435, 1440 (10ᵗʰ Cir. 1988).[7]  The Court disagrees that Plaintiff's allegation

---

[7]Contrary to Plaintiff's citation, *Dickeson* neither held nor discussed whether a public employee's membership in a political party is sufficient to show an affiliation within the meaning of the first *Elrod/Branti* prong.  The Tenth Circuit did, however, discuss at length the *Elrod* and *Branti* decisions – in which the First Amendment affiliation rights of public employees fired by members of the <u>opposing</u> political party were found to have been violated.  *See Dickeson,* 844 F.2d at 1441.  Indeed, the court's affiliation analysis in *Dickeson* mostly involved the question of whether the plaintiff employees' clerical positions with the sheriff's department required a particular party affiliation for the effective performance of the public office involved, under the second *Elrod/Branti* prong – though the court found a genuine issue of material fact as to whether the employees were actually discharged on account of their affiliation <u>with the former sheriff</u>.  *Id.* at 1441-45.

that he was fired on account of his *candidacy* is equivalent to an allegation that he was filed on account of any political *affiliation*.  The factual circumstances we confront in this case are analogous to those confronted by the Tenth Circuit in *Jantzen*, in which a Deputy Sheriff was terminated from his employment by the incumbent Sheriff immediately upon the Deputy Sheriff's announcement that he would challenge him in the upcoming sheriff's election. Considering the plaintiff's allegation and testimony "that the only reason he was fired was because he was a candidate for sheriff against his own boss," the Tenth Circuit held "that the only factor driving [the plaintiff's] termination was his candidacy qua candidacy," which was not evidence that "he was in any way terminated for supporting or affiliating with a particular political party. . . . The right to political affiliation does not encompass the mere right to affiliate with oneself." *Jantzen,* 188 F.3d at 1252, citing *Carver v. Dennis*, 104 F.3d 847, 850 (6th Cir. 1997) ( incumbent county clerk's firing of deputy county clerk for running against him was "not a dismissal because of political beliefs or affiliations [, and] not a dismissal based on politics at all, except to the extent that running for public office is a political exercise in its broad sense").

Here, Plaintiff does not set forth anywhere in his Complaint or briefing on either of the instant motions allegations that he was terminated because of his affiliation with the Democratic party or any other group or individual.[8]  Rather, he alleges that he was terminated as a consequence of personally challenging Cordova in the Democratic primary – and in fact offers evidence that he denied any party affiliation to Cordova on the eve of his firing.  *See* Doc. 1 ¶ 11 ("for ur info I don't run under no parties").  Because Plaintiff has failed to identify any protected

---

[8]*See, e.g.*, Doc. 24 Ex. 2, Marquez Deposition at 69:11-69:15 (Plaintiff testifying that none of the Mora County Commissioners ever encouraged or spoke to him about the possibility of challenging Cordova in the sheriff's election).

affiliation that could have been a substantial or motivating factor in his dismissal, the Court finds that he is not entitled to summary judgment on his freedom of affiliation claim.

   B.  Freedom of Speech

   The second half of Plaintiff's claim accuses Defendants of violating his free speech rights.  In the wake of the Supreme Court's 2006 decision in *Garcetti*, a government employee's claim of retaliation by his employer on account of his exercise of his free speech rights requires a five-prong analysis.[9]  The Court must determine (1) whether the employee was speaking as a private citizen or pursuant to his official duties; (2) if the employee was speaking as a private citizen, whether the subject of the speech is a matter of public concern; and (3) if the employee was speaking as a citizen about a matter of public concern, "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer."[10]  If the Court determines that the employee's interest outweighs that of the employer, the jury – as the trier of fact – must resolve (4) whether the speech was "a substantial factor or a motivating factor in [a]

---

   [9]Prior to *Garcetti*, we applied the "balancing test" first articulated in *Pickering v. Board of Educ. of Township High School Dist.*, 391 U.S. 563 (1968), to a government employee's free-speech retaliation claim.  *Garcetti* enhanced and "significantly modified" *Pickering* by, *inter alia*, adding a new first prong to the analysis.  *See Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1328 (10th Cir. 2007).  While neither party has set forth or applied either test in its briefs, Marquez' invocation of his right to "freely comment, believe, and associate in matters of public interest and concern" clearly mandates application of *Garcetti* and, in fact, mirrors the language of the 10th Circuit in applying the then-reigning *Pickering* test in *Serna*.  *See supra* n.1; *see also Serna v. Manzano*, 616 F.2d 1165, 1166 (10th Cir. 1980) ("[t]he trial judge applied the rule of *Pickering* . . . which calls for a balancing between the right of a public employee to freely comment, believe and associate in matters of public interest and concern and the competing interest of the State. . . .").

   [10]*Casey*, 473 F.3d at 1327.

10

detrimental employment action";[11] and, finally, (5) if the employee has demonstrated that his speech was a substantial or motivating factor in the detrimental action, whether the employer "demonstrate[s] that it would have taken the same action against the employee even in the absence of the protected speech."[12]  While resolution of the final two prongs is typically reserved for the jury, summary judgment is nevertheless appropriate if facts relevant to the claim are not materially in dispute.  *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1155 (10th Cir. 2005) (affirming district court grant of summary judgment that there was no genuine issue of material fact that employer would have taken adverse action even in the absence of the protected speech).

Whether Plaintiff premises his free speech claim on any specific statement is unclear. The only statements identified in his Complaint or statement of facts that would appear to be possible bases for a retaliation claim are his March 17, 2010 announcement to Cordova "that he intended to run for election as [S]heriff of Mora County in the upcoming election" and his subsequent messages to Cordova, in which he impliedly confirmed his intentions ("I don't run under no parties").  (Doc. 1, Cplt. ¶¶ 10-11).  Declarations of candidacy have been found by another court of this Circuit to be inappropriate bases for a free speech retaliation claim, because they are not political and/or ideological statements made pursuant to that candidacy. *See Mayfield v. Merchant*, 2010 U.S. Dist. LEXIS 134008 (D. Kan., Dec. 17, 2010).  In *Mayfield*, the District of Kansas declined to apply the *Garcetti* test to the free speech retaliation claim of a deputy sheriff – fired by the incumbent sheriff after he opposed him in the Republican primary election – who failed to identify with specificity the actual speech upon which his claim was

---

[11]*Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.,* 232 F.3d 1334, 1338 (10th Cir. 2000) (quotation omitted).

[12]*Id. (*quotation omitted).

based.  The court found that "the First Amendment does not protect a public employee's right by itself to be a candidate or to conduct a campaign. . . . . On a motion for summary judgment, if [the] plaintiff cannot identify protected statements or conduct, his claim necessarily fails."  *Id.* at *10-*11, citing *Deschenie v Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1276-77 n.5 (10th Cir. 2007); *Hullman v. Bd of Trustees of Pratt Cmty. College*, 950 F.2d 665, 668 (10th Cir. 1991); *Harvey v. Baker*, 242 Fed. Appx. 547, 551 (10th Cir. 2007); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199-1200 (10th Cir. 2000); *Ewers v. Bd. of County Comm'rs,* 802 F.2d 1242, 1247 (10th Cir. 2001); *Craven v. Univ. of Colo. Hosp. Auth.,* 260 F.3d 1218, 1226 (10th Cir. 2001)*; Dennison v. County of Frederick, Va.,* 921 F.2d 50, 54 (4th Cir. 1990).  Because the plaintiff did not set forth the protected speech on which his claim was based, the court could not "conduct a meaningful inquiry into the pertinent factors of the *Garcetti/Pickering* test." *Mayfield*, 2010 U.S. Dist. LEXIS, at *16.

Though the points of similarity between the facially inadequate claim in *Mayfield* and the Plaintiff's approach to pleading and briefing in the instant case are numerous, the Court is not prepared to find that Plaintiff was required to base his free speech claim on a particular statement, rather than on his candidacy itself.  While the court's analysis is persuasive, none of the cases cited in *Mayfield* involved the rejection of a free speech retaliation claim premised on a public employee's declaration of candidacy.  In fact, the Tenth Circuit applied the then-controlling *Pickering* test to the free speech retaliation claim of the terminated deputy sheriff in *Jantzen*, and specifically described that plaintiff's "political speech" as "his candidacy for office." *Jantzen,* 188 F.3d at 1257.  The Court will therefore apply the *Garcetti* factors to Plaintiff's declaration of candidacy for Sheriff.

      1.    *Whether Plaintiff spoke as a private citizen*

A government employee's speech is not protected when it is made pursuant to an official duty, "because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Deutsch v. Jordan*, 618 F.3d 1093, 1097 (10th Cir. 2010) (quotation omitted).  Here, Plaintiff's announcement that he was running for Sheriff in opposition to Cordova was obviously not made pursuant to his official duties.  Thus, Plaintiff satisfies the first prong of the *Garcetti* test.

  2.  *Whether Plaintiff's declaration of candidacy was a matter of public concern*

A statement is of public concern when it "is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004).  The Tenth Circuit has held that a public employee's "political speech – his candidacy for office – undoubtedly relates to matters of public concern." *Jantzen*, 188 F.3d at 1257.  *See also Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998) ("We would be hard pressed to classify the election of a city council member as anything other than a matter of great public concern."); *Kent v. Martin*, 252 F.3d 1141, 1144 (10th Cir. 2001).  Thus, Plaintiff satisfies the second prong of the *Garcetti* test.

  3.  *Whether Plaintiff's interest his expression outweighs Defendants' interest in regulating it*

In balancing the relative interests of the Plaintiff and the Defendants, the Court must consider as part of its analysis "whether the [allegedly protected] statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."

13

*Rankin v. McPherson*, 483 U.S. 378, 388 (1987).  The Court will defer to Defendants'
"reasonable predictions of disruption" only if they are "supported by the presentation of specific
evidence.  The employer cannot satisfy its burden by making purely speculative allegations."
*Weaver v. Chavez*, 485 F.3d 1096, 1100 (10th Cir. 2006) (quotation omitted).  "A government
employer is not required to allow events to unfold to the extent that the disruption of the office
and the destruction of working relationships is manifest before taking action."  *Id.* (quotation
omitted).

Defendants do not apply the *Garcetti* test to Plaintiff's free speech claim.  However, in
discussing the related second prong of the *Elrod/Branti* test, they profess an interest in effective
law enforcement as maintained through loyalty in their chain of command – explaining that "the
duties and job responsibilities for an Undersheriff of Mora County, by their very nature, require
political loyalty to the Sheriff."  (Doc. 24 at 14).  In support of their position, Defendants offer
Cordova's testimony as to Plaintiff's duties and responsibilities as Undersheriff – which
included supervising and disciplining sheriff's deputies, standing in for Cordova at meetings
with other law enforcement agencies, collaborating with Cordova in the investigation and hiring
of new officers, and voting on behalf of the Department at meetings of the Mora County Health
and DWI councils – evidence that, the Court agrees, demonstrates that Plaintiff's ability to
maintain a cooperative working relationship with Cordova was critical to the Department's
ability to provide Mora County with effective law enforcement.  Here, *Jantzen* is once again
instructive, as the Tenth Circuit granted summary judgment to the defendant sheriff on the free
speech claim of his terminated deputy sheriff in light of the need for "efficiency and harmony
among law enforcement personnel," which the court concluded outweighed the plaintiff's
interest in running for sheriff.  *Jantzen*, 188 F.3d at 1258.  *See also Horstkoetter v. Dept. of*

*Public Safety*, 159 F.3d 1265, 1273 (10th Cir. 1998) (finding government interest in efficient workplace outweighed police officers' interest in displaying political signs on their private property, and noting that "public endorsement of candidates by police officers has stirred great controversy within police departments and has detracted from the efficiency and the quality of the services provided by law enforcement") (quotation omitted); *Wilbur v. Mahan,* 3 F.3d 214, 218 (7th Cir. 1993) (government employee in confidential role's "declaration of candidacy" in opposition to incumbent boss was "declaration of war" making the employee "a political enemy of his boss").

Thus, the Court finds that Plaintiff does not offer sufficient evidence from which it can conclude that his interest in running for an elected office outweighed the Defendants' interest in maintaining a functioning Sheriff's Department.  Accordingly, the Court finds that Plaintiff should be denied summary judgment on his free speech claim.

II. *Defendants' Motion for Summary Judgment*

Because Plaintiff has failed to identify a protected affiliation and the evidence shows that Defendants' interest in the efficient operation of the Department outweighed his interest in declaring his candidacy for Sheriff, the Court finds that Defendants are entitled to summary judgment on the merits of both parts (freedom of association and freedom of speech) of Plaintiff's First Amendment claim.  As to Defendants' argument that Cordova is entitled to qualified immunity from Plaintiff's suit – on which their cross-motion for summary judgment primarily rests – the Court finds that because Plaintiff has failed to carry his initial burden of alleging a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Jantzen*, 188 F.3d at 1257 ("When a defendant pleads qualified immunity, the plaintiff must show that: (1) the

15

defendant's actions violated a federal constitutional or statutory right, and (2) the right violated was clearly established at the time of the conduct at issue.") (internal quotation and marks omitted); *but see Pearson v. Callahan,* 129 S. Ct. 808, 818 (2009) ("[t]he judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

Moreover, even if Plaintiff had been able to show violation of a First Amendment right, which he plainly did not, the Court finds that Cordova would be entitled to qualified immunity regardless. "For a right to be clearly established [within the meaning of the second part of the qualified immunity analysis], the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Jantzen*, 188 F.3d at 1257. Typically, in order for the law to be determined "to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). However, the Tenth Circuit has recognized that "allegations of constitutional violations that require courts to balance competing interests may make it more difficult to find the law 'clearly established' when assessing claims of qualified immunity." *Id.* (citations omitted).

Here, the very issue of whether a sheriff's employee serving in an essentially political/policymaking position has a greater interest in opposing the incumbent sheriff in an election than his employer(s) do in maintaining an efficient sheriff's department has been taken up directly by the Tenth Circuit in *Jantzen.* That holding was in keeping with, and has since been echoed by, numerous decisions of courts of this Circuit. *See Serna,* 616 F.2d at 1167

16

(affirming district court ruling that deputy sheriffs who sought to unseat their incumbent employer could not overcome "competing interest of the State [in] an efficiently run sheriff's office free from dissension, distrust and continuing discord"); *Mayfield*, 2010 U.S. Dist. LEXIS 134008 at *13-*14; *Warren v. Gaston*, 55 F. Supp.2d 1230, 1235 (D. Kan. 1999) ("[I]t is one thing for an incumbent to try and fire employees who do not belong to the right party, who fail to support the incumbent, or who support the opponent.  It is another for the employee to actually become the opponent and still expect continued employment.  The court has been unable to find any case which has extended First Amendment interests this far. . . ."); *Eaton v. Harsha*, 505 F. Supp. 2d 948 (D. Kan. 2006).

For his part, Plaintiff contends that he "has met the 'clearly established' standard" in light of the Tenth Circuit's decision in *Serna*, which he characterizes as holding "that a sheriff's department may not fire an employee in retaliation for exercising his right to freely comment, believe, and associate in matters of public interest and concern, through running for election." (Doc. 27 at 3, citing *Serna*, 616 F.2d 1165).  *Serna* – which involved the First and Fourteenth Amendment retaliation claims of two deputy sheriffs against the incumbent sheriff, who first demoted and then discharged them after one of the plaintiffs decided to challenge the sheriff at the next election and the other became his campaign manager – does not help Plaintiff.  In fact, the Tenth Circuit sustained the finding that the plaintiffs' actions failed the "balancing" prong of the *Pickering* test whose analogue in *Garcetti* Plaintiff fails here, and for the same reason – the sheriff's greater interest in maintaining an effective and well-run sheriff's department.  *Serna*, 616 F.2d at 1166-67.  While Plaintiff is correct that the Tenth Circuit noted in dicta that a public employee has a right to "freely comment, believe and associate in matters of public interest and concern," it did so in the context of juxtaposing that right against the competing interest of the

government employer "in promoting the efficiency of the public service it performs through its employees." *Id.* at 1166. Simply put, all of the relevant case law demonstrates that Plaintiff's right to freely comment and associate in matters of public interest – such as a sheriff's election – is not as absolute as he maintains. Thus, Cordova is entitled to qualified immunity, and his motion for summary judgment is granted for this reason as well.

Finally, because Defendants are collectively entitled to summary judgment on the merits, the Court need not reach their additional arguments that neither the Department nor Cordova (acting in his official capacity) could be sued under § 1983.


## CONCLUSION

For the foregoing reasons, it is therefore ordered that Plaintiff's *Motion for Summary Judgment* (Doc. 19) is DENIED, and Defendants' *Motion for Summary Judgment* (Doc. 21) is GRANTED.


_____
**UNITED STATES DISTRICT JUDGE**